UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM ARNOLD, : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:11-cv-1343 (VLB) |
| : | |
| DAVID BUCK, et al., : | |
| Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #73]**

The plaintiff, William Arnold, brings claims against the defendants, Meriden Police Officers David Buck and Jeffrey Selander, for use of excessive force during his arrest. The defendants have filed a motion for summary judgment on the grounds that their actions were reasonable and that they are protected by qualified immunity.[1] For the reasons that follow, the defendants' motion is granted in part.

I.  **Standard of Review**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of

---

[1] The court has considered the defendants' motion for summary judgment and supplemental memorandum and the plaintiff's three memoranda in opposition to the motion for summary judgment.

evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

## II.  Facts[2]

---

[2] The facts are taken from the parties' Local Rule 56(a) Statements and the exhibits submitted in support of and in opposition to the motion for summary

The defendants are officers with the Meriden Police Department. On November 27, 2009, they received a report that the plaintiff was a suspect in a domestic tire slashing incident. The officer investigating the incident sent out a description of the suspect and indicated that he was driving a white Ford Expedition. The defendants went to Unit 31 of a condominium complex, the address provided to them for the plaintiff. When no one answered the door and the unit appeared unoccupied, the defendants returned to their vehicles and started to leave the condominium complex.

As they were leaving the driveway, each defendant observed a man, the plaintiff, fitting the suspect's description. Defendant Selander, in the second car, stopped the plaintiff. Defendant Buck, backed up and exited his vehicle to assist defendant Selander. At this time, the plaintiff was carrying keys, a cell phone and a knife. When defendant Selander stopped him, he put the items in his pockets.

Defendant Selander told the plaintiff that he matched the physical description of a suspect and directed him to the front of the police cruiser. The plaintiff was agitated and questioned the officers. The defendants state that the plaintiff eventually followed their instructions and placed his hands on the cruiser's hood but did not keep them there. The plaintiff states that he never complied with this instruction.

Defendant Selander prepared to pat down the plaintiff. Before he could do that, the plaintiff removed his hands from the hood of the cruise. The defendants state that the plaintiff repeatedly attempted to put his hands in his pockets.

**judgment.**

Defendant Buck lightly pushed on the plaintiff to get him to return his hands to the cruiser. The plaintiff stated in his deposition that he kept his hands raised at the level of the defendants' heads at all times.

The plaintiff stepped back from the cruiser and started running away. The defendants chased the plaintiff with drawn tasers. Defendant Selander fired his taser at the plaintiff. The plaintiff was wearing a "puffy coat." The taser hit the plaintiff in the back of his coat and had no effect. Defendant Selander then abandoned his taser and drew his pistol. Both defendants continued to chase the plaintiff.

Defendant Buck fired his taser toward the plaintiff's buttocks. The plaintiff stumbled, but did not stop. The plaintiff had reached the middle of the road. Defendant Selander shot the plaintiff in the leg. The plaintiff spun around but did not fall to the ground. Defendant Buck again fired his taser. When the taser did not stop the plaintiff, defendant Selander shot him a second time.

### III. Discussion

#### A. Use of Excessive Force

The use of excessive force by police officers prior to arraignment violates the Fourth Amendment's prohibition against unreasonable seizures. See Graham v. Connor, 490 U.S. 386, 395 (1989). To prevail on his excessive force claim against the defendants, the plaintiff must show that the amount of force used was objectively unreasonable, either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. See Graham at 396; Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004).

4

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather that with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The inquiry must consider that officers often are required to make split-second decisions in rapidly changing situations when determining appropriate conduct, including the amount of force required. See id. at 397. Thus, the court must consider the totality of the circumstances and balance "the nature and quality of the intrusion on an individual's Fourth Amendment interest against countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted; citation omitted). In performing this analysis, the court considers the severity of the crime underlying the arrest, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to flee. See id.; Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) . Thus, for the court to grant the defendants' motion for summary judgment, it must conclude that there is no genuine issue of material fact regarding the objective reasonableness of the force used by the defendants.

    1.    **Deadly Force**

The plaintiff contends that defendant Selander used deadly force when he shot the plaintiff twice. Defendant Selander argues that his use of force was objectively reasonable.

When determining objective reasonableness in a claim involving the use of deadly force, the court considers only "the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to

employ deadly force." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36-37 (2d Cir. 2003). "It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 36. "The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In other cases in this district, police officers using deadly force have been granted summary judgment. See Greenwald v. Town of Rocky Hill, No. 3:09cv211(VLB), 2011 WL 4915165 (D. Conn. Oct. 17, 2011); Estate of Chipwata v. Rovinetti, No. 3:02CV858(DJS), 2004 WL 722166 (D. Conn. Mar. 31, 2004).

In Chipwata, the police officer went to an apartment in response to a report that a man was armed with a knife and that a woman had been injured. When he arrived, he asked the suspect to show him the knife and to show his hands. The suspect did not immediately comply with the order. The suspect then rose, went into the kitchen, grabbed the knife and pointed it at the police officer. The parties disagree whether the suspect was pointing the knife at the police officer in a threatening manner or holding it out to give it to the officer. Both sides agree, however, that the suspect followed the police officer out of the apartment with the knife blade pointing toward the officer. The police officer and a neighbor stated that the suspect advanced toward the officer and ignored orders to drop the knife. The police officer shot the suspect once before he raised the knife and at

**6**

least twice more afterwards.  The suspect was killed.  2004 WL 722166, at *1-2.  In light of the undisputed facts, the court concluded that a reasonable police officer could have believed that he was about to be attacked by the suspect of a violent assault.  Thus, the court found the police officer's actions objectively reasonable.  Id. at *6.

In Greenwald, the plaintiff's girlfriend reported to police that he was planning to commit suicide.  The police found the plaintiff in his backyard holding a loaded rifle.  The police officers stated that, when they attempted to speak to the plaintiff, he pointed the rifle at them, ran deeper into the yard toward a large parking lot in the next property and failed to comply with orders to drop the rifle.  The plaintiff stated that the police were shining a light into his face and speaking at the same time, so he could not see any police identification or hear what was said.  The police stated that when they finally located the plaintiff he was running toward them with the rifle pointed at them.  When the plaintiff did not comply with an order to drop the rifle, one officer fired two shots at the plaintiff.  The plaintiff dropped to the ground and was secured.  He did not have any gunshot wounds.  The plaintiff states that he never directly pointed the rifle at the police officers and never intended to harm anyone but himself.  2011 WL 4915165, at *1-4.  The court concluded that a reasonable officer could not comprehend what the plaintiff was thinking and would understand that the plaintiff was an immediate threat to the safety of the officers and others.  Thus, the court determined that the officer acted reasonably in responding to the threat.  Id. at *11.

The defendants argue that if the record blatantly contradicts the plaintiff's

verison of the facts, the court should adopt the record version of the facts when ruling on a motion to for summary judgment.  See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (district court should have credited verison of events on videotape rather than accept the plaintiff's contrary statements).  Here, however, neither party has submitted a videotape of the incident.

Defendant Selander was aware that the plaintiff was suspected of slashing the tires on his girlfriend's car a short time earlier.  The plaintiff expounds on his deteriorating relationship with his girlfriend and the reasons why she would have fabricated the claim.  This is irrelevant to the defendants' understanding of the situation they encountered.  The plaintiff has provided no evidence that either defendant was aware of the history of his relationship with his girlfriend.

The plaintiff and defendants present contradictory descriptions of the incident.  The plaintiff stated in his complaint that he had a knife, albeit closed, in his hand as he approached the defendants.  See Doc. #1 at 6, 8.  When he was stopped, he put the knife in his pocket.  See Doc. #95-1 at 51, 53, 67.  Defendant Selander informed the plaintiff that he matched the description of a suspect they were seeking and directed the plaintiff to go to the front of his cruiser and place his hands on the hood.  The defendants state that the plaintiff kept removing his hands from the hood and trying to reach into his pockets.  The plaintiff stated in his deposition that he never placed his hands on the hood; he held them at the height of the defendants faces.  He concedes that he repeatedly challenged the defendants about why he was stopped.  See Doc. #95-1 at 49-50, 54, 55, 56.

Although one civilian witness appears to support the defendants' verison

of events, that the plaintiff was brandishing a knife, the witness states in the transcript of his interview with the police that he saw an object in the plaintiff's hand, but could not positively identify it as a knife. See Doc. #73-5 at 9. Later, after describing numerous orders by the defendants to drop the knife, he speaks of the plaintiff brandishing a knife. See Doc. #73-5 at 10. Two other civilian witnesses to at least part of the incident do not mention seeing a knife. See Doc. #85-4 at 19-21, 22-25.

Defendant Selander states that, at the time he used deadly force, the plaintiff was advancing toward defendant Buck brandishing a knife. When the plaintiff did not comply with repeated orders to drop the knife, defendant Selander fired the first shot. See Selander Aff. ¶¶ 18-22, Doc. #73-4 at 3-4. The plaintiff states that he had a cell phone in his hand and that he was trying to record the incident. See Doc. #85-3 at 35; Doc. #95-1 at 65. The plaintiff spun around but did not stop. Defendant Buck deployed his taser but it did not cause the plaintiff to fall to the ground. When the plaintiff continued to advance, defendant Selander fired the second shot. See Selander Aff. ¶ 23. The plaintiff states that the electrical charge from the taser prevented him from falling to the ground. See Doc. #85-3 at 36; Doc. #95-1 at 70-71.

Based on the evidence submitted by the parties, the court concludes that there is a genuine issue of material fact regarding whether the plaintiff was brandishing a knife at the time defendant Selander fired his pistol. The record does not blatantly contradict the plaintiff's verison of events. Accordingly, the court cannot, at this time, determine whether defendant Selander's actions were

objectively reasonable.

### 2. Nonlethal Force

The plaintiff also argues that the defendants used excessive force against him by repeatedly using their tasers, an exercise of nonlethal force. The defendants contend that the use of tasers was objectively reasonable as a means to effect his arrest and protect themselves from serious injury. As with the use of deadly force, the court applies the objective reasonableness test in evaluating a Fourth Amendment claim for use of excessive nonlethal force. See Scott v. Harris, 550 U.S. at 383.

Courts considering the use of tasers have found no constitutional violation where the suspect was resisting the police officers. For example, in Crowell v. Kirkpatrick, 667 F. Supp. 2d 391 (D. Vt. 2009), the plaintiffs were unlawfully trespassing on private property as a protest over their mistaken belief that the property would be commercially developed. The plaintiffs ignored repeated orders to leave and chained themselves to a barrel they had brought onto the property. After repeated warnings, the police officers used tasers to get the plaintiffs to disengage from the barrel. Id. at 398-400. The court found that the officers acted reasonably in using tasers as a last resort to arrest suspects who are resisting and ignoring lawful orders compliance with which would have obviated the need for force. Id. at 409-10. See also, e.g., Meyers v. Baltimore County, Md., ___ F.3d ___, 2013 WL 388125, at *6 (4th Cir. Feb. 1, 2013) (holding that use of taser three times against suspect acting erratically and advancing on police in confined space while holding baseball bat was constitutional but

**10**

additional seven uses of taser after suspect had been subdued was not); <u>Buckley v. Haddock</u>, 292 F. App'x 791, 792-94 (11th Cir. 2008) (finding no Fourth Amendment violation where taser used against suspect who resisted arrest by laying on the ground and refusing to stand); <u>Schumacher v. Halverson</u>, 467 F. Supp. 2d 939, 943-45 (D. Minn. 2006) (finding no Fourth Amendment violation where taser used against suspect who was intoxicated, resisting arrest by grabbing basketball pole and refusing all orders to release pole); <u>Devoe v. Rebant</u>, No. 05-71863, 2006 WL 334297, at *1-2, *6 (E.D. Mich. Feb. 13, 2006) (finding no Fourth Amendment violation where taser used to subdue suspect who, although handcuffed, was refusing to provide identification and get into patrol car).  If, however, the suspect is not actively resisting arrest, use of a taser is not warranted.  See <u>Orell v. Muckle</u>, No. 3:11-CV-97(WWE), 2012 WL 3231017, at *3-4 (D. Conn. Aug. 6, 2012) (denying summary judgment on Fourth Amendment claim where taser used on person not suspected of committing a crime or being armed and who was not actively resisting medical responders or police officer in a violent or threatening manner); <u>Towsley v. Frank</u>, NO. 2010 WL 5394837, at *10 (D. Vt. Dec. 28, 2010) (summary judgment not warranted where police officer used taser when suspect, who had fallen through window and landed on pavement, was not resisting or fleeing arrest and might be seriously injured).

  Even assuming, for purposes of deciding this claim, that the plaintiff was not brandishing a knife, the court concludes that the use of the tasers during the pursuit was objectively reasonable.  The defendants were aware that the plaintiff possessed a knife.  He was argumentative.  He fled from the police officers and

failed to comply with all orders to stop.  In light of the plaintiff's flight and refusal to comply with orders, the use of nonlethal force to subdue him was objectively reasonable.  The defendants' motion for summary judgment is granted as to all claims for excessive force regarding the use of the tasers during pursuit.

The plaintiff argues, however, that many taser deployments occurred after he had been shot and subdued.  He points to the various police reports which indicate that the incident occurred before 10:00 p.m.  For example, one patrol officer was dispatched to the scene at 10:06 p.m. in response to a report that shots already had been fired.  See Doc. #75-1 at 56.  Another officer reported being dispatched to the scene at 9:55 p.m. in response to a report of a man down.  See Doc. #75-1 at 57.  The report of taser deployments, however, shows five deployments all after 10:00 p.m.  See Doc. #75-2 at 10-11.  To the extent that some of the taser deployments occurred after the plaintiff had been subdued, summary judgment is not warranted.  The case will proceed on the claims for use of the taser after the plaintiff had been subdued.

     B.    Qualified Immunity

The defendants also argue that they are protected by qualified immunity regarding the use of force.  The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware.  See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the Court considers two

questions:  first, whether, construing the facts in favor of the non-moving party, there is a violation of a constitutionally protected right; and second, whether, considering the facts of the case before it, that right was clearly established at the time of the incident.  Qualified immunity is warranted unless the state official's conduct violated a clearly established constitutional right.  See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 813, 815-16 (2009) (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order).  To evaluate whether a right is clearly established, the Court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).  The analysis focuses on cases from the Supreme Court and Second Circuit.  See Williams v. Greifinger, 97 F.3d 699, 706 (2d Cir. 1996).

The use of objectively unreasonable force violates the Fourth Amendment. See Graham, 490 U.S. at 395.  The court determined above that there is a genuine issue of material fact regarding whether defendant Selander actions regarding use of deadly force and both defendants actions regarding use of nonlethal force after the plaintiff had been subdued were objectively reasonable.  The inability to resolve these issues also prevents the court from determining whether a reasonable police officer would understand that defendants' actions were unlawful.  Thus, at this time, the court cannot determine whether the defendants are protected by qualified immunity.

    C.    <u>State Law Claim - Assault and Battery</u>

The plaintiff asserts state law claims of assault and battery against the defendants. The defendants argue that these claims must fail because their actions were justified.

The defense of self-defense is available in a claim for the intentional torts of civil assault and battery. See <u>Brown v. Robishaw</u>, 202 Conn. 628, 636, 922, A.2d 1086, 1092 (2007). Connecticut General Statutes § 53a-22(b) provides that a police officer may use physical force against another person if the officer reasonably believes the force to be necessary to prevent the escape from custody of a person believed to have committed an offense. Subsection (c) allows a police officer to use deadly force against another person under certain circumstances only if the police officer reasonably believes that use of deadly force is necessary.

The court has concluded above that issues of fact preclude a determination that the use of force was reasonably necessary. Accordingly, the defendants' motion for summary judgment is denied as to the claims for assault and battery.

D.     <u>State Law Claim - Constitutional Violations</u>

Finally, the plaintiff includes claims for violation of his rights under Article I, section 8 of the Connecticut Constitution. The defendants contend that these claims are not cognizable because there is no private right of action for money damages.

There is no "all-encompassing damages action for any and all alleged violations of state constitutional provisions." <u>ATC Partnership v. Town of</u>

**Windham**, 251 Conn. 597, 613, 741 A.2d 305, 315 (1999).  The state court determines whether to recognize such a cause of action on a case-by-case basis.  In making that determination, the court considers factors including the nature of the constitutional provision, the allegedly unconstitutional conduct, the nature of the harm, and other reasons set forth in <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 390-97 (1971).  <u>See</u> <u>ATC Partnership</u>. 251 Conn. at 313-14, 741 A.2d at 315.  With regard to Article I, section 8, the Connecticut Supreme Court has specifically declined to create a private right of action.  <u>See</u> <u>Kelley Property Development, Inc. v. Lebanon</u>, 226 Conn. 314, 339-40 627 A,2d 909, 922 (1993) (no private cause of action for violation of due process clause of state constitution, Article I, section 8); <u>see also</u> <u>Bazzano v. City of Hartford</u>, No. CV 980584611S, 1999 WL 1097174 (Conn. Super. Ct. Nov. 18, 1999) (no claim for money damages for violation of Article I, sections 7, 8 and 9 in claim for use of excessive force in connection with stop, detention and arrest; plaintiff afforded adequate redress under state tort law).  In the absence of state cases establishing a private right of action, the court declines to create one here.  The defendants' motion for summary judgment is granted as to these claims.

### IV.  <u>Conclusion</u>

The defendants' motion for summary judgment [Doc. #73] is GRANTED as to the claims arising from the defendants use of tasers against the plaintiff during pursuit and DENIED as to the claims arising from defendant Selander's use of deadly force and the use of tasers against the plaintiff after he had been subdued.

The motion for summary judgment also is granted on the claims for violation of the Connecticut Constitution. The case will proceed against the defendants on the federal claims for use of excessive force and the state law claim of assault and battery.

It is so ordered.

                                                                                                   _____/s/_____
                                                                                                   Vanessa L. Bryant
                                                                                                   United States District Judge

Dated at Hartford, Connecticut: August 2, 2013.